IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JASON KINNICK,

        Plaintiff,

                                              No. CIV 06-477 RB/CEG

v.

VILLAGE OF RUIDOSO DOWNS, et. al,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendants' Motion to Enforce Settlement. *See Doc. 14*. Pursuant to 28 U.S.C. § 636(b)(1)(B), the District Judge assigned to this case has referred the Motion to Enforce Settlement for a report and recommendation. *See Doc. 20*. On May 2, 2007 and May 24, 2007, the Court held evidentiary hearings. *See Docs. 19, 22*. For the reasons set forth below, the Court recommends that Defendant's Motion to Enforce Settlement be granted.

## I.  Facts

Plaintiff, Jason Kinnick ("Kinnick"), through his attorney J. Robert Beauvais ("Mr. Beauvais"), filed a civil rights complaint against the City of Ruidoso Downs ("Ruidoso Downs") and several Ruidoso Downs officials for claims arising from his discharge as a Ruidoso Downs police officer. *See Doc. 1*. Shortly after the lawsuit was filed, the parties entered into a preliminary agreement. *See Doc. 5*. The specifics of the preliminary agreement were outlined in an August 15, 2006 letter from Ruidoso Downs' City Attorney, Daniel A. Bryant ("Mr. Bryant"), to Mr. Beauvais. *See Doc. 23*. Generally, the preliminary agreement proposed that Kinnick be

paid his net back wages and given a post-termination hearing.  *Id.*

On November 15, 2006, before a post-termination hearing was held and before any payments were made under the preliminary agreement, Kinnick began working as a police officer with the Town of Carrizozo.  Sometime between November 15, 2006 and December 7, 2006, Kinnick had a telephone conversation with Mr. Beauvais in which Mr. Beauvais explained to him the effect that his current employment had on the damages in his lawsuit.  *See May 24, 2007 Evidentiary Hearing Recording ("May 24th Record").*  Specifically, Beauvais informed Kinnick that his future wage claim terminated upon his employment with the Town of Carrizozo and that his damages would now be characterized as "back pay."  *Id.*; *Docs. 24, 25.*  Based on Kinnick's payroll records, Mr. Beauvais calculated his lost wages to be $32,461.25.  *Id.*  Mr. Beauvais explained to Kinnick that he was going to attempt to settle his lawsuit for his back pay, plus any attorney fees owed.  *Id.*  Kinnick agreed with the terms of the settlement offer.[1]  *Id.*  In a letter to Mr. Bryant dated December 7, 2006, Mr. Beauvais proposed to "resolve this case completely by the payment of the lost wages and the stated attorney fees of $3,800."  *Doc. 24.*

Following the offer of settlement, Mr. Beauvais and Mr. Bryant engaged in discussions to clarify the payment contemplated by the settlement and how to address any income that Kinnick may have earned from other sources between the date of his termination from Ruidoso Downs and his employment with the Town of Carrizozo ("supplemental income").  On or about January 17, 2007, Mr. Beauvais met with Kinnick to discuss whether Kinnick had any supplemental income.  *See May 24th Record.*  At that meeting, Kinnick signed an affidavit, prepared by Mr.

---

[1] At the evidentiary hearings, however, Kinnick testified that he "had no idea that this settlement was being presented" until reading a draft settlement agreement on February 1, 2007.  *May 2, 2007 Evidentiary Hearing Recording ("May 2nd Record"); May 24th Record.*

Beauvais in his presence, which stated that he had "no [supplemental] income." *Doc. 26*.

On January 17, 2007, Mr. Beauvais sent a letter to Mr. Bryant and counsel of record for Defendants, James M. Hudson ("Mr. Hudson"), enclosing Kinnick's supplemental income affidavit. *Id*. In conclusion, the letter stated: "I will wait until January 26, 2007 to obtain the settlement proceeds. Thereafter, the firm intends to file a motion to enforce the settlement with the federal court." *Id*. Kinnick received a copy of this letter. *See May 24th Record*. Upon receipt of this letter, Kinnick did not contact Mr. Beauvais to indicate disagreement with the settlement of his claims or to the enforcement of the settlement with the Court. *Id*.

After January 17, 2007, Mr. Beauvais, Mr. Bryant, and Mr. Hudson had additional discussions regarding the specifics of the settlement. A draft settlement agreement was prepared by Defendants and was sent to Mr. Beauvais via facsimile on January 31, 2007. *See Doc. 27*. On February 1, 2007, Kinnick came to Mr. Beauvais's office to review the draft settlement agreement. Mr. Beauvais was not present when Kinnick reviewed the draft settlement agreement. After reviewing the draft settlement agreement, Kinnick refused to sign it because of an ambiguity in paragraph two, page two ("paragraph two"). *See May 2nd Record*. Specifically, Kinnick was concerned that language in paragraph two would decrease his total settlement amount due to his employment with the Town of Carrizozo. *Id*.; *see also Doc. 27* at 3. Beauvais's assistant highlighted the paragraph containing the ambiguity and made a notation on the front of the draft: "Jason declined to sign due to reasons not agreed upon (see highlighted) 02-01-07 1:25 pm." *Doc. 27* at 1. Kinnick did not object to any other portions of the draft settlement agreement. *See May 24th Record; see also May 2nd Record*.

On February 2, 2007, Mr. Beauvais had a telephone conversation with Mr. Hudson

3

regarding the ambiguity contained in paragraph two.  *See Doc. 28*.  On the same date, Mr.

Beauvais sent a facsimile to Mr. Hudson containing a revised paragraph two that "correctly

stat[ed] [Mr. Kinnick's] position."  *Id*.  A copy of the facsimile was also sent to Kinnick.  *Id*.

Kinnick did not object to the revised language, any other provision in the draft settlement

agreement, or to the settlement of his case.  *See May 24th Record*.

On February 5, 2007, Mr. Hudson sent a final settlement agreement to Mr. Beauvais.  *See*

*Doc. 29*.  The final settlement agreement contained the aforementioned revision to paragraph two.

*Id*.  Mr. Hudson also sent Mr. Beauvais the pleadings necessary for a dismissal with prejudice, as

contemplated by the settlement agreement.  *Id*.

Sometime after February 2, 2007, but before February 20, 2007, Kinnick voluntarily

terminated his employment with the Town of Carrizozo due to: (i) commute time to work,      (ii)

lack of benefits, and (iii) hours required.  *See May 2nd Record*.  On February 20, 2007, Mr.

Beauvais requested that Kinnick come to his office to sign the final settlement agreement.  *See*

*May 24th Record*.  On February 20, 2007, Kinnick refused to sign the settlement agreement

because the settlement did not "clear his name," and, in addition, because he did not understand

why his future wage claim had been converted to a back pay claim.  *May 2nd Record*; *see also*

*May 24th Record*.  Except for the ambiguity contained in paragraph two, this was the first time

that Kinnick objected to the terms of the settlement.[2]  *See May 24th Record*.

---

[2] On March 1, 2007, Mr. Beauvais filed a Motion to Withdraw, citing a complete breakdown of the
attorney-client relationship due to Kinnick's failure to execute the settlement documents.  *See Doc 15*.  The Court
granted the Motion to Withdrawal on April 9, 2007.  *See Doc. 17*.  After Mr. Beauvais withdrew, Kinnick
proceeded pro se.

## II.  Discussion

### A.  Law Regarding Settlements

A district court has authority, while a case is pending before it, to enforce settlement agreements reached by litigants.  *See United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).  Issues involving the enforcement of a settlement agreement are resolved by applying state contract law.  *See United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).  New Mexico public policy favors settlement agreements.  *See Navajo Tribe of Indians v. Hanosh Chevrolet-Buck, Inc.*, 749 P.2d 90, 92 (N.M. 1998).  Because settlement agreements are highly favored, a party seeking relief from a settlement has the burden of persuasion.  *See Marrujo v. Chavez*, 426 P.2d 199, 201 (N.M. 1967); *Gonzales v. Atnip*, 692 P.2d 1343, 1344 (N.M. Ct. App. 1984); *Judd v. University of New Mexico*, No. 97-2273, 1998 WL 314315, at **2 (10th Cir. June 2, 1998).  Whether Mr. Kinnick has met this burden is a question of fact.  *See Trujillo v. State of New Mexico*, No. 98-2068, 1999 WL 64885, *2 (10th Cir. February 11, 1999)(citing *Turner v. Burlington N. R.R.*, 771 F.2d 341, 345-46 (8th Cir. 1985)).

"Although the decision to settle a case rests with the client, courts will presume that an attorney who enters into a settlement agreement has the authority to do so."  *Conway v. Brooklyn Union Gas Co.*, 236 F.Supp.2d 241, 247 (E.D.N.Y. 2002)(citing *Pereira v. Sonia Holdings* (*In re Artha Mgmt.*), 91 F.3d 326, 329 (2d Cir. 1996)).  The Tenth Circuit and the Supreme Court of New Mexico have recognized that express as well as apparent authority may bind a client when circumstances indicate that the principal is holding out his or her attorney as having authority to

act on his or her behalf.[3]  *See Chavez v. Primus Automotive Financial Services*, No. 97-2142,

1997 WL 634090, *3-5 (10th Cir. October 15, 1997); *Navajo Tribe of Indians*, 749 P.2d at 92.

"[I]f an attorney has apparent authority to settle a case, and the opposing counsel has no real

reason to doubt this authority, then the settlement will be upheld."  *Conway*, 236 F.Supp.2d at

247 (citing *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir.

1979)).  Apparent authority is "that authority which a principal holds his agent out as possessing

or permits him to exercise or to represent himself as possessing."  *Tabet v. Campbell*, 681 P.2d

1111, 1114 (N.M. 1984).  "Apparent authority to settle a case can be inferred if the principal

knowingly permits its agents to exercise such authority."  *Navajo Tribe of Indians*, 749 P.2d at

93.

## B.  Analysis

Kinnick has failed to satisfy his burden of persuasion.  It is clear from the testimony

elicited and documentary evidence that Kinnick cloaked his attorney with express and apparent

authority to settle his case.  Kinnick gave Mr. Beauvais clear and unequivocal express authority in

a telephone conversation that occurred sometime between November 15, 2006 and December 7,

2006.  During this conversation, Beauvais explained to Kinnick the terms of the settlement offer

and Kinnick gave Mr. Beauvais the authority to make that offer.  *See May 24th Record*.

Notwithstanding this authority, Mr. Beauvais also had the apparent authority to settle Kinnick's

claims.  Kinnick executed an affidavit to facilitate settlement, did not voice his objection to terms

of the settlement until well after it was formed, and received correspondence regarding the

---

[3] A client may give his or her attorney express authority to compromise or settle a cause of action, but such authority must be "clear and unequivocal."  *Augustus v. John Williams & Assocs., Inc.*, 589 P.2d 1028, 1030 (N.M. 1979).

essential terms of the settlement and his attorney's threat to enforce the settlement with the Court. Such actions would reasonably lead the Defendants to conclude that Kinnick knowingly permitted Mr. Beauvais to exercise such authority. Accordingly, apparent authority can be inferred. *See Navajo Tribe of Indians*, 749 P.2d at 93. Because opposing counsel had "no real reason" to doubt Mr. Beauvais's apparent authority, the settlement should be upheld. *Conway*, 236 F.Supp.2d at 247.

In light of all the evidence presented, it is not possible that Kinnick "had no idea that this settlement was being presented" until reading a draft settlement agreement on February 1, 2007. Instead, what is readily apparent from the record and the testimony elicited during the evidentiary hearings is that on February 20, 2007, Kinnick changed his mind about the settlement. In the middle of February, Kinnick voluntary terminated his employment with the Town of Carrizozo. Due to his voluntary termination and his inability to obtain other employment in Lincoln County, the settlement no longer appealed to him. However, some three months earlier, Mr. Beauvais discussed the terms of the settlement with Kinnick and Kinnick gave him the authority to settle his case. Kinnick's second-guessing and change of heart does not satisfy his requisite burden of persuasion. In these proceedings a settlement was reached. Because Mr. Beauvais was cloaked with express and apparent settlement authority, the Court should enforce the settlement.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1)    the Motion to Enforce Settlement be granted (*Doc. 14*);

2)    Jason Kinnick be ordered to execute the Settlement Agreement, Release and Covenant Not to Sue (*Doc. 30*); and

3)      an Order of Dismissal be entered, dismissing all claims with prejudice, including claims for attorney fees and costs as required by settlement.


**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**


_____
UNITED STATES MAGISTRATE JUDGE

8